**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Joseph SCANLAND,
Defendant-Appellant.**

No. 73–2819.

United States Court of Appeals,
Fifth Circuit.

June 14, 1974.

J. M. Druhan, Jr., Mobile, Ala. (Court-appointed), for defendant-appellant.

Charles White-Spunner, U. S. Atty., Irwin W. Coleman, Jr., Asst. U. S. Atty., Mobile, Ala., for plaintiff-appellee.

Before GEWIN, GOLDBERG and CLARK, Circuit Judges.

GEWIN, Circuit Judge:

## I

In a two-count indictment William J. Scanland was charged with passing two counterfeit twenty dollar bills in violation of 18 U.S.C. § 472.[1] After a jury trial a guilty verdict was returned, and he was sentenced to a five year term of imprisonment on each count; the terms to be served consecutively.

The appellant presents two principal issues for our review. First, he contends that the district court erred in admitting evidence of a prior "bad" act of a similar nature to the offense alleged in the indictment since the prosecution stated at an Omnibus hearing[2] that such evidence would not be relied upon to prove knowledge or intent. Second, he asserts that it was error to limit his inquiry concerning other counterfeit bills in circulation. Finding merit in his first contention we reverse and remand.

## II

Scanland was identified by the clerks of two business establishments as the man who successfully passed a counterfeit twenty dollar bill in their store. His distinctive red hair apparently aided in establishing his identity. His modus operandi had been the same at both stores; he would pay for a small purchase with a twenty dollar bill. Both clerks became suspicious because of the bill's peculiar appearance and the appellant's nervous behavior. Each of these twenty dollar bills was established to be counterfeit by expert testimony.

Earlier the same day the appellant attempted to pass a twenty dollar bill at a third business establishment. In this instance, however, the clerk, Michael Palmer, rejected the bill because of its appearance and returned it to appellant. He then received another bill from Scanland that looked genuine. Mr. Palmer identified Scanland and testified that he made a small purchase with a twenty dollar bill.

An assistant United States Attorney notified appellant's counsel by letter of this prior incident but stated that because the Government could not show or prove that the bill was indeed counterfeit, the incident was not included in

---

1. Section 472 provides:

   "Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both."

2. The Omnibus Hearing Report at II(e) provides:

   The defense requests the following information and the Government states:

   (1) The Government will not rely on prior acts or convictions of a similar nature for proof of knowledge or intent.

   The agreement was signed by Government counsel, appellant's counsel, the appellant and a United States Magistrate. The Omnibus Hearing Report was approved by the district court and expressly adopted as binding upon the parties with no exceptions.

the indictment.[3] Notwithstanding the agreement reached at the Omnibus hearing or the subsequent letter, at trial the prosecution introduced this prior occurrence in order to establish the necessary intent to defraud.[4] A primary defense of the appellant was his lack of that intent. He maintains that he came into possession of the bills innocently.

### III

■■ When the Government and the accused voluntarily enter into pre-trial agreements we believe the parties are entitled to rely on such agreements in the preparation of their case. Subsequent developments, of course, may make it necessary for either or both parties to be released from their Omnibus hearing agreements. We expressly refuse to diminish the sound discretion vested in the district court to grant such releases.[5] Even minimal standards of fairness, however, would require a sound analysis of the attempted deviation. The court should inquire as to whether reasonable notice was given to the adversary of the change in strategy. Furthermore, the potential for prejudice should be balanced against the reason for the release.

■■ The Government contends that its letter[6] to the defense counsel provided adequate notice. Although the letter provided notice of the Government's knowledge of the incident it did not provide notice of the intention to introduce

evidence of it at trial. Indeed, the letter seems to reaffirm the Omnibus agreement and explain the reason for it. The prosecution also asserts that prior to the actual trial the witness to the previous similar act, Michael Palmer, testified at an *in camera* hearing, the purpose of which was to negate the existence of impermissibly suggestive photographs for identification. It is contended that it should have been clear to the defense that witnesses so interrogated were to be used at trial. Even if it should have been clear to the appellant's counsel that Michael Palmer would testify and that his testimony was to be used in violation of the agreement, we cannot say this action provided reasonable notice especially in view of the fact that the mentioned hearing took place at the first day of the trial. The *in camera* hearing occurred during the lunch recess after the jury had been chosen in the morning and before the trial began in the early afternoon. Even a clear and express notice at this time may leave inadequate time to alter trial preparation. Moreover, defense counsel should be able to rely on such an agreement. It should not be presumed that the commitment would be breached in such a casual manner.

■ Inadequate notice is one factor to be weighed in determining potential prejudice. As mentioned earlier a principal defense strategy was innocent possession. This theory is much less plau-

---

3. Four days after the Omnibus hearing the assistant United States Attorney wrote a follow-up letter to appellant's counsel and stated in part as follows:

There is, however, one other place where a Simmons spread involving Scanland was shown and this person positively identified the photograph of Scanland in a Simmons spread. I would have put it in the indictment *or used it to show prior acts except for* the fact that this person, Michael Palmer, at Pak-a-Sak Food Store No. 22, Three Notch Road, Mobile, Alabama, called the Secret Service on January 7, 1973, and advised that a white male attempted to pass a $20 bill that looked bad and that it looked blurred and too dark. The bill was tendered for a small pur-

chase and Mr. Palmer refused to accept the $20 bill. He was then given another bill that looked good. *In view of the fact that I could not show the bill was counterfeit, I did not put it in the indictment.* (Emphasis added)

4. The confusion apparently resulted from a lack of communication between the assistant United States Attorney who handled the pre-trial aspects of the case and the United States Attorney who served as Government counsel at trial.

5. *See* 1 C. Wright, Federal Practice and Procedure § 293 at 575 (1969).

6. *See* note 3, *supra*.

sible if three similar acts are proved in a short time span than it would be if only two such acts were shown. Given reasonable notice of the change in Government tactics a defendant would likely revise his theory of defense.[7] At least there should be enough time allowed to properly consider a possible change in defense strategy. The appellee argues, however, that the appellant's failure to initially base his objection specifically on the Omnibus agreement clearly shows that there was no reliance on the agreement and, therefore, no resulting prejudice. But the appellant continuously objected to testimony by Mr. Palmer regarding the previous similar act. Apparently when it became clear to the appellant how Mr. Palmer's testimony was to be used his counsel requested an opportunity to review the Omnibus Hearing Report.[8] Later counsel indicated that he was unaware that the prior inci-

dent was to be introduced.[9] We feel that appellant's specific objection was raised in a timely manner, and any shortcoming in articulating the objection is easily explainable by the unexpected nature of the issue. We cannot say that there was no potential for prejudice.

Despite the lack of reasonable notice and the potential for prejudice there may be some cases where the reason for the requested release from an agreement set forth in an Omnibus Hearing Report will outweigh all other factors. Not only might the release be necessary, but it might be quite justifiable in light of subsequent events. In the present case, however, the district court in making its ruling advanced no substantial reason for releasing the Government from its agreement. It only stated that it questioned the value of Omnibus reports and cited a departure by the appellant.[10]

7. It may be appropriate for the district court in weighing the potential for prejudice to analyze other possible defense theories.

8. [Defense Counsel] All right, I would object, and also at this time reemphasize my objections to any testimony by Michael Palmer. I believe Your Honor—I wasn't clear on what you said, whether you were going to reserve your opinion or make a charge on it.

[THE COURT] I will make a charge on it as to like or similar circumstances, and how the jury can consider it.

[Defense Counsel] I would like the opportunity to review the report from the omnibus hearing to see what the official report says.

[THE COURT] On What?

[Defense Counsel] On that particular aspect, prior convictions and prior actions, and those type of things.

[THE COURT] As to whether the government will rely on those?

[Defense Counsel] Yes sir.

[THE COURT] All right. I will take a look at it.

9. [Defense Counsel] Well, I disagree. My objection is to the relevance of the thing, the relevancy from the time Favre told me he wasn't going to use it because he didn't have the bill. It was not relevant because he didn't have a bill, and it is still not relevant because he doesn't have a bill. That is my position.

[THE COURT] Your position is that— your objection is to the relevancy—not the fact that you were prejudiced by the fact that the government said it was not going to attempt to rely on that?

[Defense Counsel] No sir. I can't say. I did not know that until after we got into the case itself that that was back in the objection—I mean in the record. But the reason for my objection was based on that basis, that it was irrelevant, and the basis of my argument is because of what I was told at that time and what is in this agreement from the government. I can't put it in compartments. I don't think it is possible.

10. [THE COURT] Well, as to what the Omnibus hearing really accomplishes, I don't know. I think that counsel goes through these omnibus hearings and then promptly files the thing and forgets what is contained in it. For instance, the Omnibus hearing report here advises the Court that the defendant would rely on an alibi, and the Court was prepared to charge on alibi, and then there was no reference to alibi. The defendant can't be prejudiced by that because there is nothing contained in the Omnibus hearing that could prejudice the defendant if he changed his mind totally. So I am not implying that. All I am saying is that I question the net worth, and always have, of these Omnibus reports. I am going to let the evidence stand as is and I will charge them.

Furthermore, we do not regard the apparent lack of communication in the United States Attorney's office to be an overwhelming reason for release.[11]

■ Having established that the departure from the agreement was erroneously allowed in this instance, the appellee would now assert that the error was harmless. We have previously explained the possible prejudice to the appellant's innocent possession defense theory, and upon these facts we cannot say that the evidence of a prior attempt to pass a "peculiar looking twenty"[12] was harmless beyond a reasonable doubt.

## IV

■ Because the question may arise on retrial we shall briefly discuss the appellant's contentions with respect to the limitation of his inquiry regarding other counterfeit bills in circulation. In a motion to produce which was denied the appellant asked the district court "to order the United States to produce at the time of trial any and all bills alleged to be counterfeit in its possession, bearing the same serial numbers as the bills charged in the indictment against this defendant." At trial upon cross-examination of a Secret Service agent the appellant's counsel asked if he knew of any notes in circulation in Mobile County with the same or similar serial numbers. The agent replied that he did know of such bills, but when he was asked if he could produce them the prosecution objected stating the matter had already been decided. The prosecution objection was sustained.

The appellant hoped to establish that a large number of bills were in circulation, and this arguably would tend to prove that he came into possession of the bills innocently.[13] The Government contends that the appellant's requests were too broad and were properly denied. Neither request was limited to the time period of the alleged offenses. The motion to produce was not specifically limited to Mobile County. The request at trial involved both the same and similar serial numbers. While not unmindful of a district court's broad discretion concerning matters of relevancy it may be that counterfeit bills circulating in the same county, with the same or similar serial numbers, during the same time as the alleged offenses would indeed have possible relevancy on the question of intent. If the proper predicate is laid and a timely request is made by the appellant, the district court should cautiously and carefully consider granting such a request.[14]

Reversed and remanded.

---

11. *See* note 4, *supra.*

12. Because we reverse and remand on the basis of the violated agreement it is not necessary to discuss the admissibility of this particular alleged prior bad act. Upon remand, however, the district court should examine United States v. Broadway, 477 F.2d 991 (5th Cir. 1973) and United States v. Yaughn, 493 F.2d 441 (5th Cir. 1974) slip op. p. 442. Nevertheless, we do note that the testimony concerning the prior act of passing "funny 20's" in *Yaughn* was sought to depict a witness' participation in the charged offense, not the defendant's state of mind or guilty knowledge.

13. The existence of a large number of similar counterfeit bills in circulation is apparently a two edged sword. Many a prosecutor would not be reluctant to see the inference arise that a large counterfeiting ring was operating in the area.

14. *Cf.* Cotton v. United States, 361 F.2d 673, 676 (8th Cir. 1966). In *Cotton* the court noted the possible relevance of a large number of other bills in circulation in that it would tend to prove innocent possession. The court did not reverse, however, for it found that the trial court's action in closing the door to this inquiry was well within its broad discretionary powers.