UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert Wayne TINKER, Defendant–
Appellant.

No. 91–2153.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 4, 1992.

Decided Dec. 15, 1992.*

Edward Ewell, Jr., Asst. U.S. Atty., John C. Engstrom (briefed), Office of the U.S. Attorney, Detroit, MI, for plaintiff-appellee.

James C. Thomas (briefed), Detroit, MI, for defendant-appellant.

Before MARTIN and SILER, Circuit Judges; and DOWD, District Judge.**

---

* This decision was originally issued as an "unpublished decision" filed on December 15, 1992.

** The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

PER CURIAM.

Defendant, Robert Wayne Tinker, was convicted of possession with intent to distribute a substance containing cocaine base under 21 U.S.C. § 841(a)(1) ("count 1") and unlawful possession of a .38 caliber revolver and a .22 caliber rifle under 18 U.S.C. § 922(g)(1) ("count 2"). The issues are whether: (1) count 2 of the indictment stated a valid charge against defendant; (2) the disparate treatment of powder and crack cocaine for sentencing purposes violates due process; and (3) the district court erroneously admitted evidence of other crimes. For the reasons stated herein, the judgment of the district court is AFFIRMED.

## ANALYSIS

1. *Count 2 of the indictment stated a valid charge against defendant.*

■ Pursuant to count 2 of the indictment, defendant was convicted of unlawful possession of a revolver and rifle under 18 U.S.C. § 922(g)(1). He contends that Michigan law restored his civil rights before the date of possession charged in the indictment. Therefore, citing 18 U.S.C. § 921(a)(20), he argues that he was legally entitled to possess firearms on that date.

> What constitutes a conviction ... shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction ... for which a person has ... had civil rights restored shall not be considered a conviction ..., unless such ... restoration ... expressly provides that the person may not ... possess, or receive firearms.

18 U.S.C. § 921(a)(20). This exclusion must be analyzed in light of the "whole of state law." *United States v. Cassidy*, 899 F.2d 543, 549 (6th Cir.1990). Accordingly, we must look to whether Michigan law entitled defendant to vote, seek and hold public

office, serve on a jury, and ship, transport, possess, or receive a firearm. *Id.*

However, "[u]nder federal law, a person is either treated as a convicted felon, and thus prohibited from carrying any firearms, or is treated as though he [or she] had a clean record, and thus allowed to carry all legal firearms." *United States v. Driscoll*, 970 F.2d 1472, 1480–81 (6th Cir. 1992). "Michigan has [not] demonstrated sufficient trust in its convicted felons to exempt them from the prohibitions listed in § 922(g)(1)." *Id.* Due to "the state's refusal to vouch for" defendant's trustworthiness, he cannot claim "the protection of 18 U.S.C. § 921(a)(20)." *Id.* at 1481–82. Therefore, Count 2 of the indictment stated a valid charge against defendant.

2. *Disparate treatment of powder and crack cocaine for sentencing purposes is constitutional.*

■ Defendant argues that treating cocaine base as equal to 100 times the same cocaine amount for sentencing purposes violates due process and equal protection. These constitutional challenges are meritless. *United States v. Williams*, 962 F.2d 1218, 1227–28 (6th Cir.1992); *United States v. Pickett*, 941 F.2d 411, 418 (6th Cir.1991). "Congress's act was sufficiently rational to meet the demands of substantive due process." *Id.* Moreover, 21 U.S.C. § 841(b) and the United States Sentencing Guidelines,[1] which treat one gram of crack as the equivalent of 100 grams of cocaine, do *not* violate equal protection. *Williams*, 962 F.2d at 1227–28 (joining "every circuit which has addressed this issue").

3. *The district court properly admitted the evidence of other crimes.*

Prior to trial, counsel agreed to refer to a drive-by shooting as a "traffic incident." At trial, Officer Nagy testified that when he interviewed defendant regarding a car

---

1. [T]he United States Sentencing Commission only implemented a congressional directive set forth by statute when applying the "100 to 1 ratio".... In *Mistretta v. United States*, 488 U.S. 361 [109 S.Ct. 647, 102 L.Ed.2d 714] ... (1989), the Supreme Court held constitutional Congress's delegation to the Commission of the power to implement its directives.... Therefore, the sole question before us ... is whether the decision by Congress to apply a "100 to 1 ratio" is constitutional. *United States v. Buckner*, 894 F.2d 975, 978 (8th Cir.1990).

chase, defendant asked him if he could remove a .22 caliber rifle from a car trunk. Pursuing a theory of recent fabrication, defense counsel asked Officer Gemmato about the fact that Officer Nagy's police report did *not* mention the .22 rifle. Then, the prosecutor asked Agent Gemmato: "[I]f Robert Tinker had told that police officer that he thought he had a .22 caliber rifle in his trunk, would that have related to the alleged incident?" He answered: "No, it would not have. The alleged incident stated that the driver of the gold Nissan, alleged to be Mr. Tinker, was firing a handgun out the window."

Defense counsel objected to the response and moved for a mistrial, stating that the testimony violated counsels' agreement and was "extrinsic to the charges." The district court overruled the objection and denied the mistrial motion, stating:

> [T]hat statement ... could have been entered into evidence, not for the truth of it but ... that policeman went to that home when he saw that Nissan parked in front of it. That gave him ample probable cause to do everything that he did.... [H]ow you elicited that stipulation, I don't know.... But ..., I don't think there's any harm—totally harmless.

Thus, it released the Government from its pretrial agreement.

▇▇ Generally, parties are entitled to rely on pretrial agreements. *United States v. Laboy*, 909 F.2d 581, 586 (1st Cir.1990). However, in its "substantial discretion," the district court may release the parties from a pretrial agreement. *Id.* (citing *United States v. Jackson*, 621 F.2d 216, 220 (5th Cir.1980). Normally, this decision depends upon: (1) "whether the defendant had reasonable notice of the breach of the agreement"; and (2) "the balance between the potential for prejudice and the reason for the release." *Id.* Nonetheless, "[d]espite the lack of reasonable notice and the potential for prejudice there may be some cases where the reason for the requested release from an agreement ... will outweigh all other factors." *United States v. Scanland*, 495 F.2d 1104, 1107 (5th Cir.

1974). Subsequent events may make a release both necessary and justifiable. *Id.*

▇▇ Here, defendant opened up the matter by asking Officer Gemmato whether Officer Nagy's police report mentioned the .22 rifle. *Cf. United States v. Reece*, 614 F.2d 1259, 1262 (10th Cir.1980). This court reviews evidentiary rulings under an abuse of discretion standard. *United States v. Levy*, 904 F.2d 1026, 1029 (6th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 974, 112 L.Ed.2d 1060 (1991). As defendant's recent fabrication theory made the drive-by shooting more relevant than originally anticipated, the district court did *not* abuse its discretion in releasing the Government from the agreement. *Id.*

Moreover, "given the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and ... the Constitution does not guarantee such a trial." *United States v. Hasting*, 461 U.S. 499, 508–09, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983). Therefore, we must consider the whole trial record and ignore harmless errors. *Id.* at 509, 103 S.Ct. at 1980.

▇▇ Regarding count 1, agents testified about defendant's proximity to the drugs found in his home, and defendant's housemate testified that he had observed defendant selling crack cocaine on numerous occasions and purchased crack cocaine from defendant. Regarding count 2, agents discovered five spent .38 caliber shells and a .38 caliber revolver, wrapped in a bandanna, in defendant's automobile and a box of .38 caliber ammunition and a .22 caliber rifle in defendant's bedroom. Moreover, defendant's housemate testified that he had observed defendant carrying a .38 caliber revolver numerous times and seen him wrap it in a bandanna and hide it under the dashboard of his car. In light of this evidence of defendant's guilt, any error in admitting the evidence of other crimes was harmless.

## CONCLUSION

For these reasons, this court AFFIRMS defendant's conviction and sentence.

BOYCE F. MARTIN, Jr., Circuit Judge, concurring.

I concur in the judgment in this case only because I believe that the decision in *United States v. Driscoll*, 970 F.2d 1472 (6th Cir.1992), binds this panel. I write to express my disagreement with the *Driscoll* holding that Michigan law fails to restore the civil rights of a felon after the completion of a term of imprisonment. Because of *Driscoll*, defendants are subject to the severe penalties of 18 U.S.C. § 922(g)(1) despite the substantial restoration of their civil rights under Michigan law. To me, such a result is patently unfair.

Robert Wayne Tinker was convicted for violating 18 U.S.C. § 922(g)(1), which prohibits "any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" from "possess[ing] ... any firearm or ammunition." Nonetheless, 18 U.S.C. § 921(a)(20) also provides,

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. A conviction ... for which a person ... has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

Therefore, if Michigan law restored Tinker's civil rights after his release from imprisonment and did not restrict his right to bear arms, his conviction under § 922(g)(1) is invalid. *See United States v. Cassidy*, 899 F.2d 543 (6th Cir.1990).

"[W]e must look to the whole of state law of the state of conviction to determine whether the 'convicted felon' is entitled to vote, hold public office and serve on a jury and also whether the 'convicted felon' is entitled to exercise the privileges of shipping, transporting, possessing, or receiving a firearm." *Id.* at 1486 (quoting *United States v. Cassidy*, 900 F.2d 543, 549 (6th Cir.1990)). Although the *Driscoll* majority acknowledged that Michigan law automatically restores a felon's right to vote and right to hold public office, it concluded that Michigan law does not restore the right to serve on a jury. *See id.* at 1478. As a result, the majority concluded that the defendant was subject to the prohibitions of 18 U.S.C. § 922(g)(1) because Michigan law does not substantially restore civil rights to a convicted felon. *Id.* at 1479. I agree with Judge Jones' dissent in *Driscoll*, 970 F.2d at 1486, in which he persuasively demonstrates that Michigan law substantially restores the civil rights of a felon after the term of imprisonment ends.

Michigan law does not deprive a convicted felon who has completed his sentence of his right to serve on a jury. Although the majority in *Driscoll* interprets the Michigan Court Rules as divesting a convicted felon of the right to serve as a juror, the Michigan Rules simply do not support that interpretation as it relates to convictions under § 922(g)(1). Michigan Rule of Court 2.511(D) provides, "[t]he parties *may* challenge jurors for cause" on the grounds that the person has been convicted of a felony. M.C.R. 2.511(D) (emphasis added). Therefore, "[i]f neither party in a civil suit challenges a convicted person's presence on the jury, that person may serve on the jury." *Driscoll*, 970 F.2d at 1487 (Jones, J., dissenting). Although the court must excuse a juror who is challenged for cause based on the provisions of Rule 2.511(D), one party must first make a challenge before the court must excuse the juror. *See id. See also People v. Lamar*, 153 Mich.App. 127, 395 N.W.2d 262, 265 (1986). Moreover, conviction of a felony does not affect one's *qualifications* to serve on a jury if the person has completed the terms of the sentence imposed. *Driscoll*, 970 F.2d at 1487 (Jones, J., dissenting). Section 600.-1307a of the Michigan Compiled Laws lists the qualifications required of a juror, and the list concerns competency. For jurors convicted of a felony, the statute provides that one may "[n]ot be *under sentence* for a felony at the time of jury selection."

Mich.Comp.Laws § 600.1307a(1)(e) (emphasis added). Therefore, after a convicted felon has completed the sentence imposed, that person may serve on a jury, absent a challenge for cause by one of the parties. *Driscoll*, 970 F.2d at 1487–88.

In *United States v. Cassidy*, 899 F.2d 543, 549 (6th Cir.1990), we stressed that state law need not fully restore civil rights to a convicted felon as a prerequisite to the operation of 18 U.S.C. § 921(a)(20). Rather, we specifically noted that "[i]f Congress had intended a requirement of a complete restoration of all rights and privileges forfeited upon conviction, it could easily have so stated." *Id. See also United States v. Dahms*, 938 F.2d 131, 133 (9th Cir.1991). In my opinion, *Driscoll* does not follow the standard for restoration of rights that we established in *Cassidy*, and it erroneously requires the law of the state of conviction to "restore[ ] felons to their *full* civil rights." *Driscoll*, 970 F.2d at 1480 (emphasis added). *Cassidy* and *Dahms* envision something less than a requirement of absolute restoration of civil rights, as Judge Jones explains with great clarity in his dissent. His dissent also demonstrates that Michigan law substantially restores civil rights to felons after their imprisonment ends.

Given that Michigan law restores a convicted person's civil rights upon release from imprisonment, the second part of the inquiry requires a determination of whether Michigan law expressly prohibits such a person from shipping, transporting, possessing, or receiving firearms. *Id.* at 1475. *See also* 18 U.S.C. § 921(a)(20). Because Tinker's prior criminal conviction occurred more than eight years before the instant offense, Michigan law does not restrict his right to bear arms. *See* Mich.Comp.Laws § 28.422. Therefore, Tinker's conviction under 18 U.S.C. § 922(g)(1) is invalid because Michigan law substantially restores civil rights to a convicted felon, and it does not restrict Tinker's right to bear arms.

In addition, I strongly urge *en banc* consideration of whether Michigan law substantially restores civil rights to a convicted felon. A well defined split exists on this issue between our circuit and the Ninth Circuit. In *United States v. Dahms*, 938 F.2d 131 (9th Cir.1991), the court construed Michigan law and found that it did substantially restore the civil rights of a felon for purposes of 18 U.S.C. § 921(a)(20). In *Driscoll*, a panel of this court explicitly rejected the reasoning in *Dahms*, even though both *Dahms* and *Driscoll* construed the same substantive law. The issue has also continued to divide the panels of this court. *Driscoll* implicitly rejected the reasoning of *Cassidy* by requiring a full restoration of rights. Moreover, in *United States v. Warren*, 973 F.2d 1304, 1310 (6th Cir.1992), a decision issued after *Driscoll*, a panel of this court implicitly recognized the validity of the *Dahms* holding that Michigan law substantially restores the civil rights of a convicted felon.

Therefore, I join in the judgment only.