56 F.3d 65
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Kenard K. JACKSON, Defendant-Appellant.
 No. 94-5460.
 United States Court of Appeals, Sixth Circuit.
 May 22, 1995.
 
 Before: CONTIE, RYAN, and SILER, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 The defendant, Kenard Jackson, appeals his conviction and sentence imposed following a jury verdict finding him guilty of aiding and abetting possession with intent to distribute crack cocaine, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2, and the use of a firearm during a drug trafficking offense, in violation of 18 U.S.C. Sec. 924(c) and 18 U.S.C. Sec. 2.
 
 
 2
 Jackson claims the district court: 1) Committed plain error when it failed to render judgment as a matter of law for the defendant based on insufficient evidence; 2) erred when it allowed a police officer to offer his opinion as to the meaning of the defendant's statement; 3) erred when it gave the deliberate ignorance instruction to the jury; 4) erred when it allowed the prosecutor to comment during her closing argument on fingerprint evidence, a matter the defendant claims was beyond the scope of the evidence presented at trial; and 5) violated the defendant's due process and equal protection rights by applying the sentencing guidelines for crack cocaine, which discriminate against black defendants.
 
 
 3
 We conclude that Jackson's assignments of error are without merit and we affirm his conviction and sentence.
 
 I.
 
 4
 On June 25, 1992, Deputy Kwane Morris of the Shelby County, Tennessee, Sheriff's Department was operating undercover as part of a Drug Enforcement Administration task force. At about 10:00 p.m., Morris went to an apartment building in Memphis to purchase three ounces of crack cocaine from Marvin Coleman. Morris was accompanied by a confidential informant. Several other law enforcement officers were nearby waiting for Morris to signal them to move in for the arrest. When Morris arrived at Coleman's apartment, Coleman and defendant Jackson approached Morris's car and Coleman spoke with Morris. Jackson then drove Coleman from the scene in a 1981 Honda Civic that Jackson owned. The two men returned about twenty minutes later.
 
 
 5
 When the drug transaction was about to take place, the confidential informant got out of Morris's car, and Coleman took his place in the passenger seat. During the drug transaction that ensued, Jackson stood next to the open car door. After Coleman produced the crack cocaine, Morris signaled the other officers. As the other officers moved in on the car, Jackson and Coleman fled in different directions; both were promptly apprehended. Coleman threw away several packets of crack cocaine as he attempted to flee, but these were recovered by a law enforcement officer.
 
 
 6
 When Jackson was caught, he had a loaded .38 revolver in his waistband, $440 in cash, and a beeper. After Jackson was arrested, an officer asked him about the pistol; Jackson told the officer that Coleman had given him the gun to "watch his back." Ten to fifteen minutes later, Jackson stated that he had bought the gun from a person whose name he could not remember. Jackson also had in his pants pocket a key to Coleman's apartment. After obtaining Coleman's consent to search his apartment, the police found more crack cocaine and drug paraphernalia. In a bedroom of the apartment, police found a .357 magnum pistol, .38-caliber ammunition, and the title to Jackson's Honda Civic.
 
 
 7
 Jackson was tried before a jury, which returned a verdict of guilty on all three counts. The district court sentenced Jackson to two concurrent 121-month sentences for aiding and abetting, and one 60-month consecutive sentence for using the firearm. Jackson then timely filed notice of appeal.
 
 II.
 A.
 
 8
 Jackson asserts that there was no evidence produced at trial indicating that he was aware that a drug transaction was about to take place and therefore his conviction is not supported by sufficient evidence. Because Jackson did not make a motion for acquittal under Fed. R. Crim. P. 29, he has not preserved this issue for appeal. Consequently, we review his claim of insufficient evidence for plain error only. Plain error exists if the error would result in a "manifest miscarriage of justice." United States v. Cox, 957 F.2d 264, 265 (6th Cir. 1992).
 
 
 9
 Jackson's argument on appeal amounts to nothing more than an attempt to offer other possible explanations for what took place and to suggest the possibility that Jackson was unaware of the drug transaction. Jackson's counsel made the same argument to the jurors, who rejected it. After a careful review of the trial record, we are satisfied that the jurors were wholly justified in convincing Jackson on the evidence presented, and we conclude that Jackson's conviction was not a manifest miscarriage of justice.
 
 B.
 
 10
 Jackson argues that the district court erred when it allowed a police officer to testify regarding his opinion of what Jackson meant when Jackson stated that Coleman had given him a pistol to "watch his back." On appeal, neither party makes an argument that addresses what the district court ruled. The defense counsel's objection at trial was that the officer could not know what the defendant meant by the statement, which is essentially his argument on appeal. The prosecutor responded by referring to United States v. Graham, 856 F.2d 756 (6th Cir.1988), cert. denied, 489 U.S. 1066 (1989), which holds that such testimony is admissible. The district court ruled that if Officer Galloway was an expert on "street talk," then he could testify regarding his expertise of what "watch my back" means in "street talk." Officer Galloway then testified that in "street talk, watch my back" can mean either: 1) "watch out for me so the police won't come up on me"; or 2) "watch out so won't nobody rob me."
 
 
 11
 Neither the trial lawyers nor the trial court made any mention of the Federal Rule of Evidence that was applicable in this instance. The court seemed to indicate, implicitly, that Fed. R. Evid. 702 governed. The prosecutor directed the court's attention to Graham, which holds that this type of question is permissible as lay opinion under Fed. R. Evid. 701. The court apparently ignored the reference to Graham and then ruled that if Galloway was an expert, he could testify regarding that expertise. The prosecutor did not then undertake to establish Galloway as an expert, and the court did not rule that Galloway was an expert.
 
 
 12
 We conclude that the district court erred in allowing Officer Galloway to testify as an expert on "street talk" when his expertise was not established. Fed. R. Crim. P. 52(a) directs this court to ignore as harmless those errors that "do not affect substantial rights." After carefully reviewing the record, we conclude that the other evidence against Jackson was overwhelming. Further, the term "watch my back," in the context of Jackson and Coleman's relationship, appears to be a straightforward term having a commonly understood meaning, and we think it is unlikely that Galloway's unwarranted "expert" interpretation testimony swayed the jury. Consequently, we hold that the error in allowing Galloway to express his opinion was harmless.
 
 C.
 
 13
 Jackson argues that the court's deliberate ignorance instruction was error because there was no evidence of any deliberate act that Jackson had taken to avoid learning the truth about the drug transaction. Because Jackson objected to the proposed jury instruction in the district court, we review the instruction de novo. Our duty is to determine whether the jury charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury. United States v. Lee, 991 F.2d 343, 350 (6th Cir. 1993). We agree that the challenged instruction should not have been given.
 
 
 14
 The district court's deliberate ignorance instruction was based on the Sixth Circuit's Pattern Criminal Jury Instruction 2.09. We have held that the value of this instruction is that it cautions the jurors against convicting on a negligence standard. Id. But the instruction may not properly be given when, as in this case, no evidence supports that theory of guilt. We have recently held that giving the deliberate ignorance instruction when it is not justified in the evidence is harmless error as a matter of law, so long as there is sufficient evidence to support the actual knowledge theory of guilt that is also submitted to the jury. United States v. Mari, 47 F.3d 782 (6th Cir. 1995). In Mari, the court relied on Griffinv. United States, 112 S. Ct. 466 (1991), where the Court held that so long as an instruction, erroneously given, was not illegal or unconstitutional, then the jury can be presumed to disregard instructions that are not supported by evidence.
 
 
 15
 Mari controls here. Because we conclude that ample evidence supports the theory of guilt that Jackson had actual knowledge of the cocaine transaction, we hold that the error in giving the deliberate ignorance instruction was harmless as a matter of law.
 
 D.
 
 16
 Jackson next assigns error to the district court's decision to allow the prosecutor, in her rebuttal argument following defense counsel's closing, to comment that no fingerprints were found on the gun taken from Coleman's apartment. Jackson's argument is that this statement was improper because it suggested personal knowledge on the part of the prosecutor. Whether the government's argument amounted to prosecutorial misconduct and whether the argument rendered the trial "fundamentally unfair" are mixed questions of law and fact for de novo review by this court. United States v. Clark, 982 F.2d 965, 968 (6th Cir. 1993). "[A]government attorney may not express to the jury his personal knowledge of the guilt of the accused, or bring to its attention purported facts that are not in evidence and are prejudicial." United States v. Leon, 534 F.2d 667, 679 (6th Cir. 1976).
 
 
 17
 In his closing argument, defense counsel made a comment about fingerprints and the .357 magnum that had been found at Coleman's apartment. In response to that comment, the prosecutor, in her rebuttal, stated:
 
 
 18
 There was [sic] no prints on there. We know it was handled, but it was negative for prints. There weren't any prints on it. Somebody touched it at some time, so what does that show? It shows that they didn't get any fingerprints. They tried but they didn't get any.
 
 
 19
 Defense counsel objected that the testimony regarding the .357 magnum was that it was "negative for prints" and defense counsel asserted that that meant that prints were found but they did not match the defendant's fingerprints. Counsel's objection was that the prosecutor's response was a matter of her own personal knowledge and was outside the scope of the evidence presented.
 
 
 20
 After carefully examining the record, we have found only one witness who referred to evidence as being "negative for prints." Officer Galloway testified on direct examination and cross-examination regarding the evidence that was taken from Coleman's apartment. Galloway's comment during direct examination, about evidence being "negative for prints," was in reference to the bags that were used as packages for the crack cocaine that were found in Coleman's apartment. On cross-examination, counsel for Jackson specifically asked about fingerprints on the .357 magnum found in Coleman's apartment. Galloway stated that the pistol had been sent to the lab to be checked for prints, but he did not know whether a report had been prepared regarding that pistol. Counsel then asked Galloway about the bags taken from Coleman's apartment, and again Galloway indicated that the results of the fingerprint analysis were negative. Galloway never referred to the .357 magnum as being "negative for prints."
 
 
 21
 To the extent that the prosecutor's rebuttal argument suggested that the police checked the .357 magnum for prints but found no prints, this argument went beyond the scope of the evidence because Galloway testified that he was unaware of a fingerprint report regarding the .357 magnum. Defense counsel was mistaken, however, in his argument that Galloway had testified that the pistol had been checked for prints and prints were found but they did not match Jackson's prints. No such evidence exists in the record. After reviewing the record, we conclude that the prosecutor's mistaken comments did not render the trial fundamentally unfair. Jackson was convicted of possessing a firearm during a drug trafficking offense, but the .357 magnum found in Coleman's apartment need not be linked to Jackson to support that conviction. Jackson does not dispute that he was carrying a .38 revolver when he was arrested. Even if the prosecutor had misled the jury concerning the .357 magnum, that error did not render the trial fundamentally unfair. Even without the erroneous comment, the jury could reasonably have found Jackson guilty of possessing a firearm during a drug trafficking offense solely because Jackson was armed with the .38 revolver.
 
 E.
 
 22
 Finally, Jackson argues that the sentencing guidelines violate his constitutional right to equal protection because crack cocaine is calculated as equivalent to 100 times its weight in powder cocaine. Jackson reasons that this punishes blacks disproportionately from whites. The following cases have rejected this argument: United States v. Lloyd, 10 F.3d 1197, 1220 (6th Cir. 1993), cert. denied, 115 S. Ct. 219 (1994); United States v. Tinker, 985 F.2d 241, 242 (6th Cir. 1992), cert. denied, 113 S. Ct. 1872 (1993); United States v. Levy, 904 F.2d 1026, 1034 (6th Cir. 1990), cert. denied, 111 S. Ct. 974 (1991). Jackson's argument is frivolous.
 
 III.
 
 23
 Because we find Jackson's assignments of error to be without merit, we AFFIRM his conviction and sentence.