The STATE of Ohio, Appellee,

v.

WILSON, Appellant.

[Cite as *State v. Wilson*, 156 Ohio App.3d 1, 2004-Ohio-144.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 82155.

Decided Jan. 15, 2004.

4

William D. Mason, Cuyahoga County Prosecuting Attorney, and Peter J. Corrigan, Assistant Prosecuting Attorney, for appellee.

Robert L. Tobik, Chief Public Defender, and Paul Kuzmins, Assistant Public Defender, for appellant.

ANNE L. KILBANE, Presiding Judge.

{¶ 1} Alvin Wilson appeals from a jury verdict, following a trial before Judge Brian J. Corrigan, that found him guilty of one count each of drug possession,[1] drug trafficking,[2] and possession of criminal tools.[3] He challenges the denial of his motion to suppress, the failure to force the identification of the confidential informant, the constitutionality of the penalty for possession of crack cocaine, and argues that the verdict was against the manifest weight of the evidence. We affirm.

{¶ 2} From the record we glean the following: After the Cleveland Police Narcotics Unit received many anonymous complaints about drug activity occurring at a three-unit apartment house located at 10409 Somerset Avenue, it conducted a two-week surveillance of the residence. During all hours of the night, Detectives David Varner and Gloria Santiago saw individuals come to the building, knock and be admitted through the front door, and then leave after a short period of time. When the visitor was present, no one else would enter or exit. A car parked in the building's driveway was registered to Wilson who, the detectives noted, had a history of drug-related convictions.

---

1. R.C. 2925.11.

2. R.C. 2925.03.

3. R.C. 2923.24.

{¶ 3} Because the detectives believed this activity involved drug trafficking, they contacted a confidential reliable informant ("CRI") who, they claimed, was aware of drug activity at that location because he had seen Wilson there with various amounts of cocaine, and he agreed to make a controlled drug buy. The CRI met the detectives and was searched and found free of any contraband, drugs, or money. He was then given money that had been photocopied for identification and asked to buy crack cocaine from Wilson.

{¶ 4} From an unmarked car on the street, the detectives observed the CRI knock on the front door. When it opened, they observed Wilson and another male, and then observed the three men walk through a central hallway. A short time later, they observed the CRI leave. When he was searched, they found several objects later determined to be crack cocaine.

{¶ 5} Det. Varner obtained a search warrant for 10409 Somerset Avenue # 1, Wilson's apartment. The subsequent search revealed $565 hidden in a sofa, Wilson's driver's license, several rocks of suspected crack cocaine, a digital scale, a handheld scale, a cell phone, a pager, a planner, and a mirror and knife, both of which were covered with a white powder later confirmed to be cocaine residue. Wilson's wife, Joyce,[4] was arrested, and a warrant was obtained for his arrest.

{¶ 6} He was indicted on possession of crack cocaine, drug trafficking, and possession of criminal tools. The amount of crack cocaine exceeded 25 grams but less than 100 grams, which made counts one and two first-degree felonies. At a suppression hearing, he contended that the search warrant was not supported by probable cause. The judge denied his motion to suppress, and the trial followed. Wilson was sentenced to concurrent terms of three years in prison on the first two counts and six months on count three. Wilson asserts five assignments of error set forth in Appendix A.

## PROBABLE CAUSE FOR THE SEARCH WARRANT

{¶ 7} Wilson contends that the search of his home was unlawful because the warrant obtained by Det. Varner was not supported by probable cause. He argues that the detective did not sufficiently attest to the veracity of the CRI because he relied on only one or two personal experiences with him. At the hearing, Det. Varner had testified that, although he had used this informant on only one or two prior occasions, he had been recommended by other officers, including Sergeant James Lewis.

---

4. Throughout the trial, she alternated using the name Joyce Tucker, Joyce Wilson, and Joyce Tucker–Wilson. She signed "Joyce Tucker" on her sworn police statement, and signed the apartment lease as Joyce Tucker, but asserted her name was Joyce Wilson at trial.

{¶ 8} Crim.R. 41(C) provides the standard for issuing search warrants and states:

"A warrant shall issue under this rule only on an affidavit or affidavits sworn to before a judge of a court of record and establishing the grounds for issuing the warrant. The affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located. If the judge is satisfied that probable cause for the search exists, he shall issue a warrant identifying the property and naming or describing the person or place to be searched. The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished."

{¶ 9} In assessing whether probable cause exists to issue a warrant, the United States Supreme Court has instructed magistrates to employ a totality-of-the-circumstances approach.[5] The magistrate is:

"[T]o make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing] that probable cause existed.' "[6]

{¶ 10} Therefore, the issuing judge or magistrate is to be accorded great deference, "and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant."[7]

{¶ 11} A warrant affidavit may be based upon hearsay information and need not reflect the direct observations of the affiant.[8] The judge reviewing the affidavit for a search warrant must be presented with a substantial basis to credit the hearsay to be able to make a neutral and detached determination as to probable cause.[9] Under *Aguilar v. Texas*, the "substantial basis" must include (1) information about the facts upon which the informant based his allegations of

---

5. *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527.

6. Id.

7. Id.

8. *State v. Roberts* (1980), 62 Ohio St.2d 170, 16 O.O.3d 201, 405 N.E.2d 247.

9. Id.

criminal activity, and (2) "some of the underlying circumstances from which the officer concluded that the informant * * * was 'credible' or his information 'reliable.' "[10]

■ {¶ 12} Det. Varner's affidavit outlined the surveillance operations of the residence, the information provided by the CRI, the subsequent acts by the CRI that resulted in buying rocks of crack cocaine from Wilson and turning them over to the detective. It demonstrated that the CRI had personal knowledge of drugs being sold at Wilson's residence by purchasing drugs there prior to the issuance of the warrant. "A common and acceptable basis for the informant's information is his personal observation of the facts or events described to the affiant."[11] Varner's affidavit, therefore, satisfies the first prong of the *Aguilar* test.

{¶ 13} The second prong of the *Aguilar* test is also met. The affidavit states:

"[D]uring the past week, he received information from a Confidential Reliable Informant, who has been made reliable in the fact that he has participated in numerous controlled purchases of narcotics which have led [sic] the issuance of several search warrants and led to arrests and/or convictions of numerous individuals for violations of state drug laws, that a male named Alvin Wilson is dealing cocaine from this address."

■ {¶ 14} Although it is not mandatory to show that an informant has given reliable information in the past, when an affidavit reveals that a particular informant has successfully assisted the police in the past, it gives a judge an indication of the circumstances upon which he can reach his conclusion that the informant is credible.[12] We find that the search warrant was based on probable cause and find that the first assignment of error lacks merit.

## MISREPRESENTATIONS IN THE AFFIDAVIT

■ {¶ 15} Wilson claims that numerous misrepresentations in Det. Varner's affidavit were grounds for suppression of the evidence seized at his residence. Specifically, he points out that the detective did not personally witness the CRI's purported drug buy and, in order to obtain the search warrant, he lied about his experience with the CRI.

10. *State v. Gill* (1977), 49 Ohio St.2d 177, 3 O.O.3d 241, 360 N.E.2d 693, citing *Aguilar v. Texas* (1964), 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723.

11. *State v. Karr* (1975), 44 Ohio St.2d 163, 73 O.O.2d 469, 339 N.E.2d 641.

12. *State v. Roberts*, citing *State v. Haynes* (1971), 25 Ohio St.2d 264, 54 O.O.2d 379, 267 N.E.2d 787.

{¶ 16} As discussed above, in conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, great deference is accorded to the magistrate's determination of probable cause.[13]   There is a presumption of validity with respect to the affidavit supporting the search warrant,[14] and this court is left with the question of whether an affidavit, which on its face fails to outline specific instances of a CRI's reliability, constitutes a material misstatement that would require suppression of the evidence seized.   We find that the affidavit was not so overly broad about the CRI's reliability to merit suppression.

{¶ 17} Suppression is appropriate if the person issuing the warrant was misled by information the affiant knew was false or would have known was false except for a reckless disregard for the truth.[15]   Det. Varner's affidavit does not show that he believed the information to be false or that he showed a reckless disregard for the truth.   While it would have been preferable to detail the specifics of the CRI's reliability and to outline the arrests and/or convictions that he had helped to secure, it is not necessary that the affidavit do so.   It is also not necessary for the affiant to have many prior personal experiences with the informant.   As the Ohio Supreme Court stated:

"The fact that an informant has provided reliable information in the past gives the magistrate a definite indication of credibility.   It is, of course, strongly advisable that facts as to the number of past incidents, the manner of information provided, and the degree of accuracy of the informant be included in the affidavit, in order that the magistrate be fully informed of the grounds upon which a finding of probable cause must be based.   A magistrate has discretion to require such information and 'may examine under oath the affiant and any witnesses he may produce.'   Crim. R. 41(C)." [16]

{¶ 18} The court went on to hold that, although the police affidavit at issue was sparse because it stated only that "information received from a reliable informant, who has given truthful and factual information in the recent past, states to the affiant that he/she has seen hallucinogens at this address within the past 48 hours," there was no reason to read a stricter standard into Crim.R. 41(C) in order to find that the magistrates failed to perform their duty.[17]   It determined that a statement that an informant has previously supplied accurate information

---

13.   *Illinois v. Gates*, supra.

14.   *Franks v. Delaware* (1978), 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667.

15.   *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677.

16.   *State v. Karr*, supra.

17.   Id.

was sufficient to justify a finding that the informant is credible. The second assignment of error is not well taken.

## MANIFEST WEIGHT

{¶ 19} Wilson asserts that the jury verdict was against the manifest weight of the evidence because the state's expert witness could not determine, to a reasonable degree of scientific certainty, that the substance she tested was crack cocaine rather than cocaine. When evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the 13th juror and intrudes its judgment into proceedings which it finds to be fatally flawed through misinterpretation or misapplication of the evidence by a jury which has "lost its way." [18] This power is subject to strict and narrow constraints.

"Weight of the evidence concerns 'the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *

"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." [19]

{¶ 20} Wilson challenges the jury verdict that he possessed crack cocaine because there was insufficient evidence that what was seized was crack cocaine and not base cocaine. The prosecution's scientific examiner, Erika Walker, testified about the differences between the two types of the drug, cocaine hydrochloride and crack. Crack is a ready-to-use free base for smoking, where cocaine is processed to remove the hydrochloride. She also stated that she could visually determine whether a substance is crack cocaine because crack comes in a rock form.

{¶ 21} Walker testified about two preliminary tests and one confirmatory test she conducted. She first utilized a Scott's test, a three-part color test, where a

---

18. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541.

19. Id. at 387, 678 N.E.2d 541.

sample of the suspect drug is placed in a test tube and the end result will produce a blue color. She then placed some of the substance on a microscope slide and a microcrystalline test was conducted. If it is cocaine, it forms crystals. A mass spectrometer confirmation test was also performed, and the material was tested against a known standard. As a result of the tests, the confiscated substance was determined to be a compound, mixture, preparation, or substance that contained cocaine. Upon cross-examination, Walker agreed that she had often seen powder cocaine compressed/clumped and that it could sometimes be difficult to visually discern it from the crack form. She testified that the tests she performed would show the same results for both crack cocaine and cocaine base and that another test, known as an Alkaloid base test, could have been performed to determine whether the substance seized was crack or cocaine, but it was not performed.

{¶ 22} "Mr. Yelsky: You can't tell this jury within a reasonable degree of scientific certainty that that substance is crack base cocaine can you?

{¶ 23} "Ms. Walker: No, I cannot.

{¶ 24} "Mr. Yelsky: Because you didn't do the test to distinguish the cocaine in there from the base alkaloid, did you?

{¶ 25} "Ms. Walker: That's correct."

{¶ 26} Ohio defines crack cocaine as "a compound, mixture, preparation, or substance that is or contains any amount of cocaine that is analytically identified as the base form of cocaine or that is in a form that resembles rocks or pebbles generally intended for individual use." [20] The state, therefore, does not have to prove that the cocaine found in the sample is in the base form, only that the substance contains cocaine and in a form that looks like "individual use" rocks or pebbles. Walker provided evidence that, if believed by the jury, supported a finding that the substance seized at Wilson's apartment was crack cocaine. This assignment of error has no merit.

## CONSTITUTIONALITY OF AN ENHANCED PENALTY FOR CRACK COCAINE

{¶ 27} Here Wilson contends that the statutory definition of crack cocaine is unconstitutionally broad and, therefore, his penalty for possession of that drug should not be enhanced to a felony of the first degree but should be found a fifth-degree felony under R.C. 2925.11(C)(4).[21]

---

20. R.C. 2925.01(GG).

21. He contends that he should have been convicted for possession of an unspecified amount of cocaine.

{¶ 28} R.C. 2925.01(GG) provides that crack cocaine includes free-base cocaine but does not distinguish between the two forms, either of which can be inhaled. Wilson's possession of 28.07 grams of crack cocaine, however, carries a significantly higher sentence than had he possessed the same amount of cocaine, which is a third-degree felony.

{¶ 29} *State v. Bryant*[22] outlined the differences between crack cocaine and free-base cocaine:

"Freebase cocaine is actually a different chemical product than cocaine itself. In the process of freebasing, street cocaine—which is usually in the form of a hydrochloride salt—is treated with a liquid base (such as ammonia or baking soda) to remove the hydrochloric acid. The *free* cocaine, or cocaine *base* (and hence the name freebase) is then dissolved in a solvent such as ether, from which the purified cocaine is crystallized. These crystals are then crushed and used in a special glass pipe. Smoking freebase cocaine provides a more potent 'rush' and a more powerful high than regular cocaine. The complications [introduced by freebasing] are several. First, cocaine in any of its forms is highly seductive. With freebasing, the euphoria is more intense than when the drug is inhaled. Moreover, this intense euphoria subsides into irritable craving after only a few minutes, thus influencing many users to continue freebasing for days at a time—until either they, or their drug supply, are fully exhausted. Second, the practice of freebasing is expensive. When snorting cocaine, a single gram can last a social user an entire weekend or longer. With street cocaine ranging in price anywhere from $60 to $180 a gram depending on availability and purity, even this method of ingestion can be a costly recreational pursuit. Yet with freebasing, the cost factor can undergo a geometric increase. Habitual users have been known to freebase continuously for three or four days without sleep, using up to 150 grams of cocaine in a 72–hour period. Third, [there is a danger of an explosion of ether or rum in the pipe]. * * * Contrary to another popular belief, crack is neither freebase cocaine nor purified cocaine. Part of the confusion about what crack actually is comes from the different ways that the word 'freebase' is used in the drug community. 'Freebase' (the noun) is a drug, a cocaine product converted to the base state from cocaine hydrochloride after adulterants have been chemically removed. Crack is converted to the base state *without* removing the adulterants. 'Freebasing' (the act) means to inhale vapors of cocaine base of which crack is but one form. * * * As to the presence of crack in the drug communities of the 1970's, a forty-two year-old Miami cocaine user said in 1976: *Of course* crack is nothing new. The only thing that's new is the name. Years ago it was

---

22. (July 17, 1998), Montgomery App. No. 16809, 1998 WL 399863.

called *rock, base* or *freebase,* although it really isn't *true freebase.* It was just an easier way to get something that gave a more potent rush then, the same way as now with baking soda. It never got too popular among the 1970's cokeheads because it was just not as pure a product as conventional freebase."

{¶ 30} The General Assembly has the authority to define criminal conduct and to determine the appropriate punishment. Laws enacted pursuant to this authority are valid "if they bear a real and substantial relation to the object sought to be obtained, namely the health, safety, morals or general welfare of the public, and are not arbitrary, discriminatory, capricious or unreasonable. * * * The federal test is similar. To determine whether such statutes are constitutional under federal scrutiny, we must decide if there is a rational relationship between the statute and its purpose." [23]

{¶ 31} Legislation enjoys a strong presumption of constitutionality,[24] which remains unless the challenging party establishes beyond a reasonable doubt that the legislation is unconstitutional.[25]

{¶ 32} Wilson was convicted of possession of an amount equal to or exceeding 25 grams of crack cocaine, but less than 100 grams under R.C. 2925.11(C)(4)(e), which carries a minimum mandatory prison term of three years as a first-degree felony. Had he been convicted for possession of cocaine, and not crack cocaine in the same amount, he would have faced a minimum mandatory prison term of one year for a third-degree felony. Wilson, however, does not cite any cases in support of his proposition of the unconstitutionality of the sentencing disparities between the two drugs but contends that the legislature's definition irrationally includes cocaine in its conventional, non-base form where the cocaine merely has a rocklike appearance, and that wet and/or compressed cocaine base that has clumped into rocks can be treated more severely than other and more "dry" cocaine.

{¶ 33} Absent the denial of a "fundamental right" or a situation where the law operates to the peculiar disadvantage of a "suspect class," a legislative classification will be upheld if it is rational.[26] Legislation cannot be attacked merely because it creates distinctions and thereby classifies the subjects of a law because legislation, by its very nature, treats people by groups and

---

23. *State v. Thompkins* (1996), 75 Ohio St.3d 558, 664 N.E.2d 926.

24. *State v. Thompson* (2001), 92 Ohio St.3d 584, 752 N.E.2d 276, paragraph one of the syllabus.

25. Id.

26. *State v. Rogers* (May 21, 1998), Cuyahoga App. Nos. 72736 and 72737, 1998 WL 269085

classes and must, of necessity, draw its lines based upon "amalgamations of factors." [27]   As this court noted in *Rogers*, disparate sentencing penalties for crack and powder cocaine have been held to be constitutional by the many federal courts that have considered the issue. [28]   Ohio has a legitimate interest in protecting its citizens from the dangers of illegal and highly addictive drugs.   In extending the deference due to the legislature, we find that Ohio's statute is rationally based upon the greater danger posed by crack cocaine and join both those federal and state courts in determining that different penalties for cocaine base and crack cocaine are not unconstitutionally vague.   Wilson has not established that the harsher penalties for possession of crack cocaine are vague or unconstitutionally broad, and we find this fourth assignment of error lacks merit.

## THE IDENTITY OF THE CRI

{¶ 34} Wilson claims that the judge should have ordered the state to disclose the identity of the CRI because his degree of participation as an informant transformed him into the state's witness.   The standard of review for a case involving a CRI is whether the judge abused his discretion in ordering or refusing to order disclosure of the identity of that person. [29]   The term "abuse of discretion" implies that the judge's attitude was unreasonable, arbitrary, or unconscionable. [30]   The state refused to release the identity of the CRI based on the privilege to keep it secret.

{¶ 35} A defendant is entitled to disclosure of a confidential informant's identity only where the informant's testimony is either (1) vital to establishing an essential element of the offense charged;  or (2) helpful or beneficial to the accused in preparing a defense. [31]   If the informant's degree of participation is such that the informant is essentially a state's witness, the

---

27.  *Vance v. Bradley* (1979), 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171.

28.  *United States v. Gaines* (C.A.6, 1997), 122 F.3d 324 (holding that the Sixth Circuit has "rejected every constitutional challenge"), citing *United States v. Lloyd* (C.A.6, 1993), 10 F.3d 1197, 1220;  *United States v. Tinker* (C.A.6, 1992), 985 F.2d 241, 242;  and *United States v. Avant* (C.A.6, 1990), 907 F.2d 623, 627 (sentencing distinction between cocaine base and cocaine does not violate equal protection or Eighth Amendment and term "cocaine base" not shown to be unconstitutionally vague); *United States v. Buckner* (C.A.8, 1990), 894 F.2d 975, 978–981 (stricter penalties for cocaine base than for cocaine have rational basis and do not violate substantive due process or Eighth Amendment).

29.  *State v. Brown* (1992), 64 Ohio St.3d 649, 597 N.E.2d 510.

30.  *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

31.  *State v. Williams* (1983), 4 Ohio St.3d 74, 4 OBR 196, 446 N.E.2d 779, syllabus.

balance tilts in favor of disclosure. However, when disclosure is not helpful to the defense, the state need not reveal the identity.[32]

{¶ 36} The question of disclosure of a confidential informant becomes a balancing of competing interests: the defendant's right to confront his accusers and the state's right to preserve the anonymity of informants.[33] Wilson bears the burden of establishing the need for learning the informant's identity,[34] and he has failed to meet this burden. He was charged with drug possession, drug trafficking, and possession of criminal tools and, while the testimony of the informant was helpful in establishing the probable cause for the search warrant to issue, his testimony was not vital to establishing any of the elements of Wilson's offenses. The fifth assignment of error lacks merit.

{¶ 37} The judgment is affirmed.

Judgment affirmed.

JAMES J. SWEENEY and COLLEEN CONWAY COONEY, JJ., concur.

## APPENDIX A

"I. THE TRIAL COURT ERRED IN FAILING TO GRANT THE DEFENDANT'S MOTION TO SUPPRESS WHERE THE UNDERLYING SEARCH WARRANT WAS NOT SUPPORTED BY THE REQUISITE PROBABLE CAUSE.

"II. THE TRIAL COURT ERRED IN FAILING TO GRANT THE DEFENDANT'S MOTION TO SUPPRESS WHERE THE AFFIDAVIT IN SUPPORT OF THE UNDERLYING SEARCH WARRANT CONTAINED NUMEROUS MISREPRESENTATIONS BY THE DETECTIVE.

"III. THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

"IV. THE REVISED CODE'S DEFINITION OF CRACK COCAINE IS IRRATIONAL AND THUS THE ENHANCED PENALTIES FOR THE POSSESSION OF CRACK COCAINE ARE UNCONSTITUTIONAL.

"V. THE TRIAL COURT ERRED IN FAILING TO ORDER THE STATE OF OHIO TO IDENTIFY THE ALLEGED CONFIDENTIAL RELIABLE INFORMANT."

---

32. Id.

33. Id.

34. *State v. Feltner* (1993), 87 Ohio App.3d 279, 281, 622 N.E.2d 15.