[Cite as *State v. Williams*, 2012-Ohio-1741.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97039**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## OCTAVIUS WILLIAMS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-547334

**BEFORE:** S. Gallagher, J., Boyle, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 19, 2012

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square
Suite 1616
Cleveland, OH    44113-1901


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Erica Barnhill
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH   44113

SEAN C. GALLAGHER, J.:

{¶1} Appellant Octavious Williams[1] ("Octavious") appeals his conviction for attempted murder and having a weapon while under disability. For the following reasons, we affirm.

{¶2} While history has afforded us the luxury of clarity over the participants and their actions at the fabled O.K. Corral, the same cannot be said of the events surrounding the situation arising on October 31, 2010, in the backyard of a Cleveland area residence. Octavious attended a party on that day, in the upstairs apartment where his father, Arden Terry ("Terry"), was living. Terry was living with his girlfriend, Consuela Calloway. Most of the individuals attending were members of Terry's family or Consuela's family. The party was quite large, and many witnesses later testified to tension between Terry and Consuela's respective families.

{¶3} The party began to "wind down" around midnight. The victim of this case, Consuela's cousin Dennis Cole, left the party while there were still many partygoers present. Cole admitted drinking a couple of drinks during the course of the evening, although a blood alcohol concentration ("BAC") test administered to Cole at the hospital that night revealed that Cole had a BAC of 0.27.

---

[1]The parties both spell Williams's first name"Octavious." The trial court's docket spells his first name "Octavius."

**{¶4}**  Terry's brother Harold Kyle and Cole were standing in the front of the house.    Both gentlemen, upon hearing a commotion in the back of the house and a single gunshot, walked around to the back of the house.

**{¶5}**  At the same time, Terry ran from the upstairs kitchen to the backyard where his other brother, Ardary Bright, and his uncle were arguing with Cole's brothers, Larry and Cedric Johnson.    Darnell Calloway, Larry and Cedric's brother, was also in the backyard.    Larry had a .22-caliber pistol and threatened Terry upon his arrival.    Cedric attempted to intervene and push Larry back.      Larry fired two or three shots, consistent with the police officers' later testimony that they recovered a nine-shot, .22-caliber revolver with three spent casings.    Terry ran away from Larry, but remembers hearing gunshots from another direction and Cedric yelling that he had been shot.

**{¶6}**  On his way to the backyard, Cole encountered Octavious running in his direction.    Octavious yelled a few choice words and shot Cole in the chest.    Cole attempted to flee and was shot again in the back, causing temporary paralysis that continued through trial.    It is undisputed that the backyard was well lit with an outdoor light.

**{¶7}**  Meanwhile, three teenaged children in the upstairs apartment, ran to a window.    All three placed Octavious's brother,  Ricky Williams ("Ricky"), in the backyard during the shooting despite the fact that none of the participants in the backyard melee testified to Ricky being amongst them.    One of the children claimed that Cole ran up and punched Ricky before Ricky shot Cole and that the police dragged Cole from the

backyard to the front where he lay until the ambulance arrived. Neither of the initial responding officers testified to moving Cole. The three children also testified that Octavious was in the front room of the apartment the entire time, although none of them could directly see Octavious until they returned to the living room, after the cessation of the melee.

{¶8} Finally, Terry testified that Cole and his son Demarcus Thomas exited the apartment through the back door, leading to the backyard, moments prior to the first shot being fired. This contradicted Kyle's and Cole's testimony placing them at the front of the house before the first shot was fired.

{¶9} The responding police officers remember Cole screaming that he knew who shot him. It is undisputed that three other members of Cole's family were standing around and shouting as the police started to question Cole. One of the initial responding officers stated that Cole said Octavious was the shooter. The supervising sergeant, who arrived after the responding officers, also testified that, while awaiting medical help, Cole identified Octavious as the shooter.

{¶10} After a trial by jury, Octavious was convicted of attempted murder, the felonious assault counts being merged with the attempted murder and having a weapon under disability charges. The trial court sentenced Octavious to an aggregate 15-year prison term. It is from this decision that Octavious timely appeals, raising three assignments of error, which provide as follows:

> I. Prosecutorial misconduct deprived appellant of his constitutionally
> guaranteed right to a fair trial, in violation of the Fifth and Fourteenth

Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

II. Appellant's constitutional right to counsel was prejudiced by the ineffective assistance of trial counsel.

III. Appellant's convictions are against the manifest weight of the evidence.

{¶11} In his first and second assignments of error, Octavious challenges several statements made by the prosecutor during her closing argument, more specifically, statements that alluded to matters not supported by the evidence and that vouched for or impugned the credibility of certain witnesses, and his trial counsel's failure to timely object to any such statements. For the following reasons, his first two assignments of error are without merit.

{¶12} In Ohio, courts allow prosecutors "considerable latitude" in closing arguments. *State v. Skipper*, 8th Dist. No. 81963, 2003-Ohio-3531, ¶ 40, citing *State v. Maurer*, 15 Ohio St.3d 239, 269, 473 N.E.2d 768 (1984). Nevertheless, "[p]rosecutors must avoid insinuations and assertions calculated to mislead. They may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by admissible evidence." *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990). The prosecutor is, however, permitted to fairly comment on the credibility of witnesses based on the witnesses' testimony at trial. *State v. Price*, 60 Ohio St.2d 136, 140, 398 N.E.2d 772 (1979). Finally on this point, a prosecutor's comments should not be taken out of context and given their most damaging

meaning. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996). Courts must review the statement within the context of the entire trial. *Id.*

{¶13} In this case, Octavious contends that the state, in the closing argument, improperly misrepresented the police officers' testimony that Cole identified Octavious as the shooter, improperly vouched for the police officers' and Cole's credibility, and improperly impugned the defense's witnesses, namely, the three children. Octavious did not object to any of the statements at trial. We, therefore, review for plain error. *State v. Fears*, 86 Ohio St.3d 329, 332, 1999-Ohio-111, 715 N.E.2d 136. Under Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error only exists if the outcome of the trial clearly would have been otherwise except for the error. *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61. We apply this analysis only under exceptional circumstances to prevent a manifest miscarriage of justice. *Id.*

{¶14} Octavious argues that the prosecutor mischaracterized Officer Keane's testimony regarding Cole's on-scene identification of Octavious being the shooter. Officer Keane testified that several individuals standing around the supine victim were talking at once. Octavious argues that Officer Keane could not know who identified the shooter because too many people were talking at once. Such arguments address Officer Keane's credibility, not his testimony. Officer Keane testified that he believed Cole told him the name of the shooter, and it is undisputed that Cole gave a description of the shooter and responded to Officer Keane's inquiry about whether Cole knew the shooter.

From our review of the trial record, the prosecutor did not misrepresent Officer Keane's testimony, and any arguments to the contrary are without merit.

{¶15} Octavious next argues that the prosecutor improperly vouched for the police officers' credibility when she stated that the "police don't have a dog in this fight," "they have no reason to fabricate this," and "that's not something the police are going to make a mistake about" during her closing argument.[2] He also argues that the prosecutor improperly stated that Cole is a reliable witness and claimed the defense witnesses were not credible.[3] Each of Octavious's claims takes the prosecutor's statement out of context or simply points out a basis for the jury to weigh credibility.

---

[2]The prosecutor's full statement is as follows:

So Officer Keane, Officer Mullin, [the responding officers,] come up. And Keane and Mullin and Sergeant Hutchinson all remember [Cole] on the ground screaming, hysterical, yelling out a lot, all three of them do. And why is this important? The police don't have a dog in this fight. At that point they didn't know what happened, they didn't know if Mr. Cole was the aggressor or Cole. * * * Keane and Hutchinson both recall [Cole] saying, Tay-Tay [(Octavious's nickname)] shot me, Ardy [(Terry's)] son shot me. * * * At this point the police didn't know who Ardy was, who his son was, or who Tay-Tay was. The police have no reason to fabricate this. And they both remember. All three remember [Cole] was screaming hysterically. * * * That's not something the police are going to make a mistake about, ladies and gentlemen. The identification of the person who shot them, that is someone who the police is going — the police is going to be looking for. (Tr. 733:10-19, 733:25-734:1, 735:4-9, 786:12-17.)

[3]The prosecutor's statements during closing arguments were: "[Cole] is a reliable witness. He has been consistent throughout the pendencies [sic] of this case. When given an opportunity to identify someone other than the defendant, he did not." (Tr. 789:6-10.)

**{¶16}** This court previously found no error in closing arguments that facially or more directly asserted the prosecutor's opinion. For example, this court previously upheld the following statements by the prosecutor about the veracity of the defendant:

> That is not believable. It is made up to fit this set of facts. (T. 214)

> She — the defendant has reason to fabricate. She has reason to lie. She has lied in the past. She has been convicted of crimes that involve dishonesty. She was not being honest with you when she testified * * *. (T. 215)

> [B]ut the only person that had any reason to tell a lie was — was the defendant. (T. 217) *State v. Skipper*, 8th Dist. No. 81963, 2003-Ohio-3531, ¶ 42-44.

**{¶17}** This court distinguished stating a personal belief that the defendant is lying from suggesting that the evidence demonstrates that the defendant is lying. *Id.* at ¶ 45. Given the context of the entire trial, this court surpassed its uneasiness with the prosecutor's direct assertions that the defendant was lying based on the context of the statement; in other words, the statements merely pointed out that the evidence demonstrated the defendant was lying and therefore the prosecutor's diction was, if anything, poorly chosen.[4] *Id.* at ¶ 46.

**{¶18}** In this case, the evidence at trial established that the police officers treated Cole as a suspect because they did not know who committed any crimes and needed to protect their own safety upon initially arriving at the scene. There was a throng of

---

[4]We acknowledge the appearance of an intellectual slight-of-hand involved with parsing a prosecutor's statement so finely. In Ohio, courts must review the entire context of the trial to determine whether isolated statements are improper. The distinguishment in *Skipper* acknowledges this function and remains the precedent of this district.

partygoers racing to leave the area, and the officers needed to quickly assess the situation.

When the prosecutor's statements are placed in this context, those statements are not directed at vouching for the police officers' credibility, rather they are meant to highlight the reasons for the jury to give credibility to the police officers' testimony in light of Octavious's trial tactic — claiming the police officers misheard Cole because of the other individuals standing around.

{¶19} The same rationale applies to the prosecutor's statement about Cole's reliability. It was in the context of Cole's consistent testimony about Octavious being the shooter throughout the investigation. While we agree the prosecutor may have mischosen her words, in consideration of the context of the statements, the use of "reliable" rather than "consistent" does not amount to error. *See Skipper* at ¶ 46. Further, the prosecutor is free to comment on the facts adduced at trial to lend to or detract from a witness's credibility as long as she does not give her opinion. The closing argument, which laid out the reasons to deem the children's testimony as unreliable, does not amount to the prosecutor giving an opinion; it merely invites the jury to weigh the credibility. None of the statements made in closing were improper, much less constituted plain error.

{¶20} Octavious's ineffective assistance of counsel claim is inextricably linked to the alleged prosecutorial misconduct. In order to substantiate a claim of ineffective assistance of counsel, the appellant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant so as to deprive him

of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 311, 2009-Ohio-2961, 911 N.E.2d 242, citing *Strickland v. Washington* , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In light of our holding that the prosecutor's remarks were not improper, his trial counsel was not deficient, and his second assignment of error must be overruled.

**{¶21}** Finally, in reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether there is substantial evidence, proving beyond a reasonable doubt, that all elements of the offense were established. Under this review, we "examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81.

**{¶22}** Octavious contends that because Cole was intoxicated on the night of the shooting and gave alternate versions of the shooting — naming another as the shooter — while suffering bouts of delusion during his hospitalization; Cedric identified Ricky as the shooter; the state's forensic expert testified that Octavious did not test positive for gunshot residue[5]; and the defense witnesses testified that Octavious was in the apartment while Ricky was involved in the melee, his conviction is against the manifest weight of the evidence.

---

[5]Samples for the gunshot residue test were collected from Octavious's, Demarcus Thomas's, and Darnell Calloway's left and right hands. Only the sample from Demarcus Thomas's right hand returned a positive indication.

{¶23} Octavious's arguments are misplaced and ignore the other facts established at trial. Cedric initially told the police that he did not know who shot Cole, and it was not until after a preliminary hearing during Octavious's case that Cedric identified Ricky as the shooter. The state's expert testified that the lack of gunshot residue is not dispositive of whether the individual shot a gun, it only identifies those that have recently shot a gun. The expert stated that gunshot residue is easily wiped away after a shooting by simply putting the hand into a pocket or washing the hand with water. Finally, none of the participants in the melee testified that Ricky was present. Terry and the children claimed that Octavious was in the apartment afterwards, but that does not address the issue of whether Octavious ran outside during the fight. The children all placed Ricky outside as the shooter. Octavious's manifest weight argument depends on the jury's believing the children's version of the story over the testimony of those who participated in the fight. The jury was free to deem the children's testimony incredible based on the participants' collective testimony.

{¶24} The case ultimately rests on Cole's identification of Octavious as the shooter. After weighing the evidence and considering witness credibility, we cannot not say, based on a review of the entire record, that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. There was competent, credible evidence from Cole who saw his shooter at close range and in a well-lit area. Although Cole had issues during his hospitalization, and misrepresented the amount of his drinking before the shooting, his identification and version of the

incident remained consistent throughout the pendency of the case. Octavious's third assignment of error is overruled.

**{¶25}** Octavious's conviction is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., CONCURS;
EILEEN A. GALLAGHER, J., CONCURS IN JUDGMENT ONLY