[Cite as *State v. Bailey*, 2012-Ohio-3356.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   97330

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DECO BAILEY

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-543223

**BEFORE:**   Boyle, J., Blackmon, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:**   July 26, 2012

**ATTORNEYS FOR APPELLANT**

Joseph C. Patituce
Megan M. Patituce
Patituce & Associates, LLC
26777 Lorain Road
Suite 708
North Olmsted, Ohio   44070


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Lauren Bell
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

{¶1} Defendant-appellant, Deco Bailey, appeals his conviction for drug trafficking and drug possession. We affirm.

## Procedural History and Facts

{¶2} In October 2010, Bailey was indicted on three counts: (1) trafficking, in violation of R.C. 2925.03(A)(2); (2) drug possession, in violation of R.C. 2925.11(A); and (3) possession of criminal tools, in violation of R.C. 2923.24(A). All three counts carried a forfeiture specification for the $103 recovered from Bailey. Bailey pleaded not guilty to the charges, and the matter proceeded to a jury trial.

{¶3} According to the state's witnesses, the events leading to Bailey's arrest on October 14, 2010, are as follows: Det. Gerald Crayton received a tip from a confidential reliable informant ("CRI"), prompting him to radio Sgt. Brandon Kutz and Officer Brian Moore. Det. Crayton instructed the men to head to East 124th Street and Superior Avenue and "look out for a gold Chevy Tahoe" in a convenience store parking lot. According to Officer Moore, they had information given to them "that there was a Chevy Tahoe in the area of 124th and Superior that had a large bag of crack cocaine and possibly a gun in the vehicle." Sgt. Kutz likewise testified that they learned from the radio broadcast that "the male was in the parking lot in the vehicle and he had possession of crack cocaine and a weapon."

{¶4} Det. Crayton informed the officers that the Chevy Tahoe had left the parking lot and was heading southbound on Rosa Parks Boulevard. Sgt. Kutz and Officer Moore located the Chevy Tahoe on Rosa Parks stopped in the middle of the street, straddling both lanes of traffic. They activated their lights and sirens to pull the vehicle over. According to Officer Moore and Sgt. Kutz, once they activated their lights and sirens, the vehicle rolled for approximately 50 to 60 feet. With their weapons drawn, the officers approached the vehicle, ordering the occupants to put their hands out the window. Officer Moore testified that the driver, later identified as Bailey, was not initially complying with their commands. Officer Moore opened the driver's-side door and immediately handcuffed Bailey and then patted him down for weapons.

{¶5} Craig Kelly was seated in the front seat. Sgt. Kutz opened the front seat passenger-side door and discovered 3.07 grams of crack cocaine in a plastic bag on the floor between Kelly's right foot and the door. Sgt. Kutz handcuffed Kelly and patted him down for weapons.

{¶6} No weapons were found on either occupant, but $103 was recovered from Bailey.

{¶7} At trial, Sgt. Kutz testified that Kelly immediately denied that the crack cocaine belonged to him, claiming that Bailey "must have thrown it at my feet or towards me."

{¶8} The state also offered the testimony of Kelly at trial, who stated that he was a "longtime" friend of Bailey. According to Kelly, he flagged down Bailey and accompanied him to a corner store. At the corner store, Kelly got out of the vehicle "for a minute to speak to somebody and came back to the truck." Kelly testified that Bailey "stayed in the parking lot" but did not go into the store. After they departed the parking lot, Kelly testified that "police came from everywhere." Upon complying with the officers' order to place his hands out the window, Kelly looked down and saw a bag on the floor of the car by his seat. He testified that he did not see any bag upon entering the car the first time or exiting and entering again from the corner store — he first saw the bag when the police activated their lights and sirens.

{¶9} Kelly further testified that he got in the car with Bailey hoping to get some crack cocaine from him but that he never had the opportunity to ask. He acknowledged that he did not have any money on him but that he was hoping to get some free crack.

{¶10} On cross-examination, Kelly, who has a felony record involving unauthorized use of a motor vehicle, receiving stolen property, and breaking and entering, admitted that he negotiated a plea bargain to substantially reduce his potential sentence in this case as well as another pending case in exchange for his testimony against Bailey. He further admitted that he would do "anything to avoid prison."

{¶11} Det. Crayton testified that based on his experience dealing with thousands of arrests related to crack cocaine, 3.07 grams of crack cocaine "was consistent with someone

who was selling, trafficking." He testified that the crack cocaine recovered was large enough to "at least cut * * * 20 times."

{¶12} The jury acquitted Bailey of the possession of the criminal tools count and found that the state failed to carry its burden with respect to the forfeiture specifications. The jury found Bailey guilty of the remaining counts of possession of drugs and drug trafficking. The trial court merged the two counts at sentencing and imposed an 18-month sentence.

## Assignments of Error

{¶13} Bailey appeals, raising the following ten assignments of error:

"I. The government's lawyer engaged in, and committed prosecutorial misconduct by intentionally misleading the jury to believe facts that were both false and never introduced into evidence.

"II. The government's lawyer engaged in, and committed prosecutorial misconduct by repeatedly vouching for the credibility of a witness; specifically, the co-defendant.

"III. The defendant was denied due process of law where the court denied defendant's motion to reveal the confidential informant.

"IV. The defendant was denied due process of law where the court (1) denied defendant's motion in limine to prevent the state from presenting evidence as to what a

confidential informant told a detective and (2) overruled defendant's objection to that testimony, all in violation of *Crawford v. Washington*.

"V. The defendant was denied due process of law when the court granted the state's motion to consolidate where the state's motion was (1) untimely, (2) resulted in substantial prejudice to defendant, and (3) was not admissible as 'other acts' evidence or 'simple and direct' evidence.

"VI. The defendant was denied due process of law where the court denied defendant the ability to question the officer as to the co-defendant's criminal record pursuant to Ohio Evidence Rule 801(D)(2)(e).

"VII. The defendant was denied due process of law where the court denied defendant's motion for a mistrial due to prosecutorial misconduct.

"VIII. The defendant was denied due process of law when the court denied defendant's motion to suprress where the officers engaged in an impermissible arrest pursuant to *Terry v. Ohio*.

"IX. The defendant was denied due process of law where his conviction was not supported by legally sufficient evidence.

"X. The defendant was denied due process of law where his conviction was against the manifest weight of the evidence."

**{¶14}** For the ease of discussion, we will address these assignments of error together and out of order where appropriate.

## Motion to Suppress

**{¶15}** Bailey argues in his eighth assignment of error that the trial court erred in denying his motion to suppress. He contends that the police exceeded the scope of an investigatory stop and improperly arrested him based solely "on the word of a CI." We find that his argument lacks merit.

**{¶16}** A motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. * * * Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *Id.*

**{¶17}** Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a law enforcement officer must have a reasonable suspicion, based on specific and articulable facts, that a motorist is or has been engaged in criminal activity before stopping a vehicle. *State v. Davenport*, 8th Dist. No. 83487, 2004-Ohio-5020. An officer is justified in making an investigative stop if the specific and articulable facts available to an officer indicate that a motorist may be committing a criminal act, which includes the violation of a traffic law. *Id.*

{¶18} Initially, we note that Bailey is not challenging the police's authority to stop his vehicle and conduct an investigatory stop. Instead, he complains that the officer's act of pulling him out of the vehicle and placing him in handcuffs based solely on a tip from an informant was unlawful. But Bailey's argument misstates the facts of the record.

{¶19} Here, the evidence at the suppression hearing revealed that the police received a tip from a CRI, a person that the police worked with in approximately 50 to 60 prior cases, that directed them to Rosa Parks Boulevard, in search of a gold Chevy Tahoe. The police believed that there was crack cocaine and possibly a weapon inside the vehicle. The police encountered the vehicle stationary in the middle of the street, straddling two lanes of traffic. This traffic violation alone justified the police activating their sirens and lights. The police further testified that once they activated their lights, the vehicle began to move forward, ignoring their commands to stop. Officer Moore also testified that the driver did not immediately place his hands out the window despite the order to do so. Based on these facts, Officer Moore approached cautiously with his gun drawn. He further immediately pulled Bailey out of the car, concerned that he may have had a weapon.

{¶20} Under the totality of the circumstances, we find no violation of the Fourth Amendment. The police acted reasonably — the display of arms was reasonably necessary for the protection of the officers in this case. *See United States v. Hardnett*, 80 F.2d 353, 357 (6th Cir.1986), *cert. denied*, 479 U.S. 1097, 107 S.Ct. 1318, 94 L.Ed.2d 171

(1987). Indeed, when an officer is entitled to make an investigatory stop, the officer also may take reasonable steps to provide for his own safety. *State v. Carter*, 2d Dist. No. 21999, 2008-Ohio-2588, ¶ 24. The forcible restraint of a suspect does not necessarily convert a *Terry* detention into a formal arrest. *Id.* This is particularly true where the purpose of the restraint is for the officer's safety. *See*, *e.g.*, *State v. Dunson*, 2d Dist. No. 20961, 2006-Ohio-775, ¶ 17. Because Officer Moore reasonably believed that Bailey had a weapon based on the information provided by the CRI as well as Bailey's failure to immediately comply with the officer's orders, we find that the trial court properly denied Bailey's motion to suppress.

{¶21} The eighth assignment of error is overruled.

## Motion to Consolidate

{¶22} Bailey argues in his fifth assignment of error that the trial court abused its discretion in granting the state's motion to consolidate this case with another pending indictment. Bailey raises several arguments as to why the two cases should not have been consolidated, including that the state's motion was untimely, that the joinder failed to meet the requirements of Crim.R. 8, and that the joinder was prejudicial. But the record reveals that the two indictments were not tried together — the trial court granted the state's motion to dismiss the counts associated with the second indictment before the jury was sworn. We therefore find his arguments relating to the consolidation of the cases and the denial of his motion to sever to be irrelevant.

{¶23} As for Bailey's claim that he was still prejudiced because the jury heard during voir dire the counts of the second indictment (namely, three additional counts revealing charges for a different day than those charges giving rise to the other counts), we find this argument unpersuasive. Here, the jury was specifically instructed prior to being empaneled that they should only consider the first three counts of the indictment, which the trial court read to them after being sworn. The trial court further instructed the jury during voir dire that they "should not give any weight to the fact that an indictment has been issued." The trial court later instructed the jury at the conclusion of the trial that the indictment may not be considered as evidence. We have no reason to believe that the jury did not follow the trial court's instructions. *See State v. Dunkins*, 10 Ohio App.3d 72, 73, 460 N.E.2d 688 (9th Dist.1983) (It is presumed that the jury will obey the trial court's instructions). Accordingly, the fifth assignment of error is overruled.

## Identity of the CRI

{¶24} In his third assignment of error, Bailey argues that he was denied due process by the trial court's refusal to order the state to disclose the identity of the CRI. We disagree.

{¶25} The standard of review for a case involving a CRI is whether the judge abused her discretion in ordering or refusing to order disclosure of the identity of that person. *State v. Brown*, 64 Ohio St.3d 649, 597 N.E.2d 510 (1992). We therefore will

not reverse the trial court's decision unless it was unreasonable, arbitrary, or unconscionable. *Id.*

**{¶26}** A defendant is entitled to disclosure of a confidential informant's identity only where the informant's testimony is either (1) vital to establishing an essential element of the offense charged; or (2) helpful or beneficial to the accused in preparing a defense. *State v. Williams*, 4 Ohio St.3d 74, 446 N.E.2d 779, syllabus (1983). "If the informant's degree of participation is such that the informant is essentially a state's witness, the balance tilts in favor of disclosure." *State v. Wilson*, 156 Ohio App.3d 1, 2004-Ohio-144, 804 N.E.2d 61, ¶ 35 (8th Dist.). When disclosure is not helpful to the defense, however, the state need not reveal the identity. *Id.*

**{¶27}** Despite Bailey's broad claims that the CRI's involvement "point directly to the elements of the offenses," and that the disclosure would have been helpful to his defense, Bailey failed to satisfy his burden establishing the need for learning the informant's identity. While the testimony of the informant was helpful in establishing the probable cause to stop the vehicle, his testimony was not vital to establishing any of the elements of Bailey's offenses. *See Wilson* at ¶ 35. Moreover, Bailey's claims that the CRI's identity would have been helpful to his defense amount to nothing more than speculation. Accordingly, we cannot say that the trial court abused its discretion; the third assignment of error is overruled.

<u>Motion in Limine</u>

**{¶28}** In his fourth assignment of error, Bailey argues that the trial court erred in failing to grant his motion in limine regarding the information that the CRI relayed to Det. Crayton. He claims that the testimony was hearsay and its admission violated his right to confront witnesses as recognized in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We disagree.

**{¶29}** We note that Det. Crayon never testified as to what the CRI told him. He merely testified that as a result of his conversation with the CRI, he radioed the officers and provided them with the description of the vehicle to effectuate a stop. But we acknowledge that both Officer Moore and Sgt. Kutz testified as to the information that they learned from the radio broadcast, which directly implicated what the CRI had reported: a male in the parking lot with crack cocaine and a weapon. The trial court allowed this testimony because it found that the testimony was not hearsay. We find that the trial court did not err in doing so.

**{¶30}** Pursuant to Evid.R. 801(C), "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Statements that are not hearsay are not implicated by the confrontation clause because they are not testimonial in nature. *State v. Waddell*, 3d Dist. Nos. 9-04-30, 9-04-31, and 9-04-32, 2005-Ohio-1426, at ¶ 7, citing *Crawford v. Washington*, 541 U.S. 36. Indeed, "[t]he [Confrontation] Clause * * * does not bar the

use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford* at fn. 9.

{¶31} We find that the testimony implicating what the CRI reported was not hearsay. The evidence was introduced to provide context to the events leading up to Bailey's arrest, specifically explaining the police's actions in searching for a gold Chevy Tahoe on Rosa Parks Boulevard. It was not offered for the truth of the statement, and therefore Bailey's rights under the Confrontation Clause were not implicated.

{¶32} The fourth assignment of error is overruled.

<u>Due Process</u>

{¶33} In his sixth assignment of error, Bailey argues that he was denied due process because the trial court denied him the right to question Sgt. Kutz as to Kelly's criminal record pursuant to Evid.R. 806(A). The rule provides as follows:

> When a hearsay statement, or a statement defined in Evid.R. 801(D)(2), (c), (d), or (e), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence that would be admissible for those purposes if declarant had testified as a witness.

Evid.R. 806(A).

{¶34} Bailey maintains that once Sgt. Kutz testified as to what Kelly told him regarding the fact that Bailey threw the drugs, the trial court was required to allow Bailey to question Sgt. Kutz as to Kelly's criminal record. He contends that he was denied the

opportunity to demonstrate to the jury that Kelly's statement "was not trustworthy, reliable, and credible at the time that the officer testified."

**{¶35}** While we agree that Bailey should have been allowed to question Sgt. Kutz as to his knowledge of Kelly's criminal record under Evid.R. 806(A), we find the trial court's ruling to be harmless error under the facts of this case. "An error in the admission or exclusion of evidence is properly considered harmless error if it does not affect a substantial right of the accused." *State v. Condon*, 152 Ohio App.3d 629, 2003-Ohio-2335, 789 N.E.2d 696, ¶ 80 (1st Dist.), citing Crim.R. 52(A). Here, Kelly testified at trial, and Bailey thoroughly inquired as to Kelly's criminal record, attacking his credibility. In fact, the record reveals that defense counsel even got Kelly to admit that after having already been to prison, he now "would do anything to avoid prison." We simply find no prejudice in this case.

**{¶36}** The sixth assignment of error is overruled.

<u>Sufficiency and Manifest Weight of the Evidence</u>

**{¶37}** In his ninth assignment of error, Bailey argues that the state failed to produce sufficient evidence to convict him of drug trafficking and drug possession. He further argues in his final assignment of error that his convictions are against the manifest weight of the evidence because the state's evidence was not credible. The gravamen of both arguments is that the state failed to prove that Bailey even possessed the drugs found in the vehicle, let alone that he trafficked them.

**{¶38}** When an appellate court reviews a record upon a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶39}** Conversely, the manifest weight of the evidence standard is as follows:

> In reviewing a claim challenging the manifest weight of the evidence, [t]he question to be answered is whether there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

(Internal quotes and citations omitted.)   *Leonard* at ¶ 81.

**{¶40}** Pursuant to drug trafficking under R.C. 2925.03(A)(2), "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."

**{¶41}** R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance."

**{¶42}** The state presented evidence that Bailey was driving a vehicle that had been reported as having crack cocaine inside. The police encountered the vehicle stopped in the middle of the road; but as soon as the police activated their sirens, the vehicle slowly moved forward 50 to 60 feet. Officer Moore and Sgt. Kutz further testified that Bailey did not immediately comply with their request to place his hands out the window.

**{¶43}** The police discovered 3.07 grams of crack cocaine between the right foot of the front-seat passenger and the side door. The front-seat passenger, Kelly, testified that he never saw the drugs until he heard the police sirens. He did not see the drugs when he first entered the vehicle or when he exited and reentered at the convenience store. Kelly further testified that he got into the car with Bailey hoping to get some drugs from Bailey.

**{¶44}** The state's theory at trial was that Bailey threw the crack cocaine upon hearing the sirens, distancing the drugs from himself and implicating Kelly. Kelly's testimony, if believed, established that Bailey had constructive possession of the drugs. Likewise, we find that the state presented sufficient evidence to prove that Bailey was transporting drugs with the intent to sell. Kelly testified that he was a "longtime friend" of Bailey's and that he flagged Bailey down and got into the car, with the hope of getting crack cocaine. Det. Crayton testified that the amount of crack cocaine recovered was large enough to "at least cut * * * 20 times."

**{¶45}** We do not agree with Bailey that this case is analogous to the facts in *State v. Smith*, 8th Dist. No. 96348, 2011-Ohio-6466, where this court vacated the defendant's

drug trafficking conviction on sufficiency grounds. In *Smith*, the defendant was convicted for drug trafficking based simply on having three rocks of crack cocaine (weighing less than one gram) in his possession when the police arrested him for outstanding warrants. Conversely, in this case, the events directly leading up to Bailey's arrest specifically tied him to drug trafficking. As discussed above, the evidence revealed that Kelly — Bailey's longtime friend — flagged him down with the intent of getting crack cocaine from Bailey. Further, Bailey possessed enough crack cocaine for "20 uses" — more than the amount at issue in *Smith*.

{¶46} Construing the evidence in a light most favorable to the state, thereby taking Kelly's testimony as being true, the evidence was enough to establish that Bailey had constructive possession of the drugs and that he was transporting the drugs in his vehicle with the intent to sell.[1]

{¶47} Furthermore, we cannot say that this is the exceptional case where the jury clearly "lost its way." The determination of weight and credibility of the evidence is for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's

---

[1] We also note that, for purposes of drug trafficking in violation of R.C. 2925.03, the "sale" of a drug includes providing drugs as a "gift." *See State v. Grier*, 5th Dist. No. 2010 CA 00246, 2011-Ohio-3815, ¶ 22.

determination of the witnesses' credibility. *State v. Chandler*, 10th Dist. No. 05AP-415, 2006-Ohio-2070, ¶ 9. Here, the jury was free to believe Kelly's testimony despite him having a criminal record.

{¶48} The ninth and tenth assignments of error are overruled.

## Prosecutorial Misconduct and Motion for a Mistrial

{¶49} In his first and second assignments of error, Bailey argues that the prosecutor's comments in closing arguments denied him a fair trial; he additionally argues in his seventh assignment of error that the trial judge should have granted his motion for a mistrial based on the prosecutor's comments.

{¶50} The standard of review for prosecutorial misconduct is whether the comments and questions by the prosecution were improper, and, if so, whether they prejudiced appellant's substantial rights. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001). Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record. *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990). "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 92, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶51} Therefore, our duty is to consider the trial record and to determine whether Bailey's substantial rights were violated, thereby depriving him of a fair trial. We note,

however, that a defendant's substantial rights cannot be prejudiced when the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt, and the outcome of the case would have been the same regardless of evidence admitted erroneously. *State v. Williams*, 38 Ohio St.3d 346, 349-350, 528 N.E.2d 910 (1988).

**{¶52}** Bailey argues that the prosecutor's statements during the state's closing argument deprived him of a fair trial because the prosecutor twice told the jury that the gold Chevy Tahoe belonged to him — a fact that was neither proven nor true. He complains first of the following comment made during the prosecutor's initial closing statement: "So how do we know from the events that you heard, the evidence that you heard, that he knew that this crack was in his car? Well, it's his car. That a pretty good starting point." Next, Bailey argues that the prejudice was compounded by the following statement made when the prosecutor addressed the jury during the second closing argument: "But what was shown was exactly what I told you in my first closing. Mr. Bailey's car, Mr. Bailey as driver, Mr. Bailey with 20 uses of crack cocaine."

**{¶53}** The state counters that the prosecutor was merely summarizing "the fact that [Bailey] was driving the car and the car was under [Bailey's] control." The state further argues that "even if the statement that the car belonged to [Bailey] is factually inaccurate, the statement did not impact [Bailey's] substantial rights" because the jury was specifically instructed that closing arguments were not evidence.

**{¶54}** Although prosecutors are entitled to considerable latitude in opening and closing arguments, they must nevertheless avoid insinuations and assertions calculated to mislead. *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990). "They may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by admissible evidence." *Id.* The prosecutor is, however, permitted to fairly comment on the credibility of witnesses based on the witnesses' testimony at trial. *State v. Williams*, 8th Dist. No. 90739, 2012-Ohio-1741, ¶ 12, citing *State v. Price*, 60 Ohio St.2d 136, 140, 398 N.E.2d 772 (1979). A prosecutor's comments should not be taken out of context and given their most damaging meaning. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996). Courts must review the statement within the context of the entire trial. *Id*.

**{¶55}** While we find that the prosecutor's statements that the vehicle was Bailey's were factually inaccurate, we cannot say that it deprived Bailey of a fair trial or that Bailey was prejudiced by such comments. Here, the state's success was dependent on the jury believing that Bailey threw the drugs once the police activated their lights and sirens. The fact of who owned the vehicle was not a critical issue. Indeed, this was not a case where the police located the drugs in an obscure part of the car and each occupant was denying ownership. Nor was it a case where the drugs were found closer to the driver than the passenger. In this case, the drugs were found next to Kelly's foot who expressly testified that they were not there when he first entered the vehicle or when he later exited

and reentered the vehicle at the corner store parking lot. We fail to see how the prosecutor's misstatement of actual ownership of the vehicle, as opposed to Bailey simply driving the vehicle, would have prejudiced Bailey based on the facts of this case.

{¶56} Furthermore, Bailey never objected to these references when made by the prosecutor in closing argument. Nor did he ask for any curative instruction. And while Bailey moved for a new trial based on these statements, we cannot say that the trial court abused its discretion in denying the motion when Bailey failed to demonstrate any prejudice by the statements. *See State v. Schiebel*, 55 Ohio St.3d 71, 76, 564 N.E.2d 54 (1990) (abuse of discretion standard applies for a motion for a mistrial based on prosecutorial misconduct); *See also* Crim.R. 33(A)(2) (mistrial should be granted only if the prosecutorial misconduct "affect[ed] materially [defendant's] substantial rights").

{¶57} Bailey also argues that the prosecutor improperly vouched for the credibility of Kelly by telling the jury that "[Kelly] came here and was honest about his role in this situation." Bailey did timely object to this statement and the trial court overruled it.

{¶58} We do not find that the prosecutor's single, isolated comment that "[Kelly] was honest about his role in this situation" rises to the level of prosecutorial misconduct. Nor can we say that it amounts to the prosecutor improperly vouching for the witness's credibility when viewing the statement in its entire context.[2] Instead, we find that the

---

[2] The prosecutor's full statement is as follows: "Craig Kelly came here, he didn't want to come here, he didn't want to testify for the state. He didn't want to testify against his friend. He came here and was honest about his role in this situation." Then the defense counsel objected, which

prosecutor's statement amounted to merely pointing out that Kelly admitted to his role in this case, despite how embarrassing or incriminating it may be for him. The prosecutor's statement taken in context served to rebut the defense's claim that Kelly had no credibility and to emphasize that Kelly's plea agreement was based on him testifying honestly. Indeed, Kelly testified that his plea agreement was contingent upon him testifying honestly. The prosecutor argued that the jury should believe Kelly given that he admitted to his crack addiction and his role in trying to obtain free crack from Bailey. These statements, therefore, merely pointed out reasons why the jury should believe Kelly and summarized actual testimony that was presented. *See Williams*, 2012-Ohio-1741, at ¶ 19 (recognizing that a "prosecutor is free to comment on facts adduced at trial to lend to or detract from a witness's credibility as long as she does not give her opinion"). We simply do not find that the prosecutor's comment invaded the province of the jury or amounted to the prosecutor giving her personal opinion as to the character of the witness. Here, the jury had plenty of evidence before it to assess Kelly's credibility, and this single statement did not constitute prosecutorial misconduct.

**{¶59}** Accordingly, the first, second, and seventh assignments of error are overruled.

---

the trial court overruled. The prosecutor continued as follows: "He came here and he told that parts [sic] of his plea agreement with the State of Ohio was to testify truthfully and he told you — imagine admitting to a room of 14 strangers sitting in a box, admitting to them that he uses drugs of that [sic] he uses crack cocaine. And that he had no money on October 14, 2010 and was flagging down his friend in the hopes that he could once again get crack cocaine."

**{¶60}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

PATRICIA ANN BLACKMON, A.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR